RECEIVED
IN MONROE, LA
JUN 0 5 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **THOMAS BOUCHER** | **CIVIL ACTION NO. 05-0037** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **GRAPHIC PACKAGING INTERNATIONAL, INC., ET AL.** | **MAG. JUDGE MARK L. HORNSBY** |

RULING

Pending before the Court are cross-motions for summary judgment filed by Third-Party Plaintiff Graphic Packaging International, Inc. ("Graphic") [Doc. No. 75] and Third-Party Defendants Hydrovac Services, Inc. ("Hydrovac") [Doc. No. 57] and Zurich American Insurance Company ("Zurich") [Doc. No. 61]. Graphic claims that Hydrovac, a subcontractor who regularly performed maintenance work for Graphic, and Zurich, Hydrovac's insurer, are contractually required to provide indemnification and insurance coverage for injuries allegedly sustained by the principal plaintiff during an accident at the Graphic plant in West Monroe, Louisiana. Hydrovac and Zurich moved for summary judgment claiming that no indemnification or insurance contract was in effect prior to the accident. Graphic responds that a binding insurance and indemnity contract was formed through the parties' prior oral agreement, course of dealing, and insurance certificate.

Also pending before the Court are cross-motions for summary judgment filed by Graphic [Doc. No. 92] and Thomas Boucher ("Boucher") [Doc. No. 96], the principal plaintiff, regarding the statutory employer defense available under Louisiana Revised Statute § 23:1061. Graphic claims that it is entitled to statutory immunity from Boucher's claims of negligence and strict liability.

1

Boucher claims he is entitled to summary judgment on the statutory employer defense, reiterating Hydrovac's and Zurich's arguments that no written contract was issued prior to the accident.

For the following reasons, Hydrovac's and Zurich's Motions for Summary Judgment regarding indemnification and insurance are GRANTED, and Graphic's Motion for Summary Judgment is DENIED. Graphic's Motion for Summary Judgment regarding statutory employment is GRANTED, and Boucher's Motion for Summary Judgment is DENIED.

## I.    FACTS AND PROCEDURAL HISTORY

On October 17, 2004, Hydrovac began cleaning various equipment at the Graphic plant in West Monroe, Louisiana. On October 19, 2004, Boucher, an employee of Hydrovac, was allegedly injured while cleaning a tank. A purchase order requiring that Hydrovac provide indemnification and insurance coverage was issued by Graphic on October 21, 2004.

On December 1, 2004, Boucher filed the pending action against Graphic in state court.

On January 3, 2005, Graphic removed the case to this Court, asserting diversity jurisdiction.

On November 7, 2005, with leave of court, Graphic filed a third-party complaint against Hydrovac.

On February 15, 2006, with leave of court, Graphic filed a third-party complaint against Zurich.

On February 1, 2007, Hydrovac filed a Motion for Summary Judgment regarding indemnification and insurance [Doc. No. 57].

On February 6, 2007, Zurich filed a Motion for Summary Judgment regarding indemnification and insurance [Doc. No. 61].

On March 23, 2007, Graphic filed a cross Motion for Summary Judgment [Doc. No. 75]

2

regarding indemnification and insurance, Opposition to Hydrovac's Motion for Summary Judgment [Doc. No. 76], and Opposition to Zurich's Motion for Summary Judgment [Doc. No. 77].

On April 13, 2007, Graphic filed a Motion for Summary Judgment [Doc. No. 92] regarding statutory employment.

On April 23, 2007, Boucher filed a Motion for Summary Judgment [Doc. No. 96] regarding statutory employment.

On May 1, 2007, Hydrovac filed an opposition [Doc. No. 102] to Graphic's Motion for Summary Judgment.

On May 4, 2007, Zurich filed an opposition [Doc. No. 103] to Graphic's Motion for Summary Judgment.

On May 7, 2007, Graphic filed an opposition [Doc. No. 105] to Boucher's Motion for Summary Judgment.

On May 9, 2007, Graphic filed a reply [Doc. No. 107] to Hydrovac's opposition.

On May 16, 2007, Boucher filed an opposition [Doc. No. 111] to Graphic's Motion for Summary Judgment, and Graphic filed a reply [Doc. No. 113] to Zurich's opposition.

On May 23, 2007, Graphic filed a reply [Doc. No. 119] to Boucher's opposition.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard of Review

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion

by identifying portions of the record which highlight the absence of genuine issues of material fact. Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id.

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255.

**B.    Indemnification**

Graphic claims that a binding indemnity contract with Hydrovac was formed through an oral agreement between Graphic and Hydrovac agents. Graphic argues that Hydrovac, through its agent, Mr. Noe, orally accepted the terms and conditions of Graphic's standard purchase order in 1999 and thus unequivocally agreed to be bound by the indemnity provision in that purchase order. Mr. Touzet, Graphic's purchasing manager, testified that "[w]hile meeting with [Mr.] Noe, he agreed to perform all work pursuant to the 'Terms and Conditions' contained in the Purchase Orders sent by Graphic Packaging." [Doc. No. 75, Exh. A, ¶ 14]. Graphic also claims, in the alternative, that the parties' course of dealing shows that Hydrovac accepted the terms and conditions of the October 21, 2004 purchase order by commencing performance.

Hydrovac and Zurich respond that no indemnification agreement, written or oral, was in

effect prior to the accident. Graphic cannot prove the existence of the 1999 oral agreement because Mr. Noe died in 2005, no Hydrovac employees and no Graphic employees other than Mr. Touzet are aware of the existence or substance of the 1999 meeting, and there is no written evidence confirming this alleged oral agreement, other than a certificate of insurance. Further, an indemnity contract cannot be implied from the parties' course of dealing under Louisiana law.

In Louisiana, acceptance of an indemnity contract must be unequivocally expressed; an indemnity contract cannot be implied from the parties' course of dealing or commencement of performance. See Freeman v. Witco Corp., 108 F. Supp. 2d 643, 645 (E.D. La. 2000) (quoting Perkins v. Rubicon, Inc., 563 So. 2d 258, 259 (La. 1990) (emphasis in original)) ("'[a] contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms.'").[1] Assuming, arguendo, that express oral acceptance of an indemnity contract is sufficient[2], Graphic bears the burden of establishing the existence of the 1999 oral agreement. See

---

[1] Graphic argues that the court in Freeman held that acceptance of an indemnity contract may be implied from the parties' course of dealing if the indemnity language was routinely included in the contract. The court in Freeman clearly reasoned, only in the alternative, that, "even if the Court were to disregard the constraints of Perkins in applying the 'course of dealing' analysis," the course of dealing between the parties did not indicate consent. Id. at 646.

[2] Under Louisiana Civil Code article 1927, "[a] contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La. Civ. Code art. 1927 (emphasis added). In Freeman, the Eastern District reasoned that "the law does prescribe a certain formality for. . . a contract to indemnify [another] for its own negligence. . . it requires that [the indemnitor's] intention to so bind itself be unequivocally expressed." 108 F. Supp. 2d at 645 (emphasis added). Accordingly, consent to an indemnity contract cannot be implied from performance. Id. No court appears to have addressed whether express oral acceptance is

5

Coulon v. Witco Corp., 2003-117 (La. App. 5 Cir. 04/29/03); 845 So.2d 1152, 1156 (citing Sovereign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982 (La. 1986)) ("The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity."). An oral agreement "must be proved by at least one witness and other corroborating circumstances." La. Civ. Code art. 1846.[3] The plaintiff may serve as the witness to establish the existence of the oral contract, but proof of "other corroborating circumstances" must come from an independent source. See Gulf Container Repair Servs., Inc. v. FIC Bus. & Fin. Ctrs., Inc., 98-1144 (La. App. 5 Cir. 3/10/99); 735 So. 2d 41, 43. "Other corroborating circumstances" need only be general in nature; independent proof of every detail of the agreement is not required. Kilpatrick v. Kilpatrick, 27,241 (La. App. 2 Cir. 08/23/95); 660 So. 2d 182, 185 (citing references omitted).

Graphic cannot meet its burden of establishing the existence of the 1999 oral agreement. Graphic's agent, Mr. Touzet, qualifies as a "credible witness" for purposes of summary judgment. Arrowhead Contrs., Inc. v. Vegitation Mgmt. Specialist, Inc., No. 05-01, 2006 U.S. Dist. LEXIS 92825, at *9 (W.D. La. Dec. 20, 2006). However, Mr. Touzet cannot remember essential details about the meeting, such as whether it took place in person or over the telephone.

Additionally, Graphic has offered no independent corroboration of the agreement. Mr. Touzet testified that Mr. Noe sent a certificate of insurance naming Graphic as an "additional insured" following the 1999 meeting, but Graphic has not produced this certificate. [Doc. No. 75, Exh. E, p. 26, lines 14-15]. Melanie Haggarty, Hydrovac's corporate representative, confirmed that

---

similarly precluded and no party has raised this issue.

[3]Louisiana Civil Code article 1846 applies to contracts worth more than $500. Neither party provided analysis under article 1846; however, it is safe to assume that the value of indemnification exceeds $500.

6

any work performed by Hydrovac is governed by the terms and conditions of Graphic's standard purchase order. She testified that

> - - we have some customers that we have master agreements- - with and then we have other customers that we work for for years, like Graphic, <u>who we do not have a master service agreement with</u>. The purchase order only guarantees us payment in their system. We only require the purchase order because they require that for - - for us to receive payment. So it's their terms. We either work under their terms or we just don't work there.

[Doc. No. 75, Exh. D, p. 12, lines 2-12] (emphasis added). Rather than corroborate Graphic's claim, Ms. Haggarty's statement confirms that Hydrovac does not have a master service agreement with Graphic, oral or written.[4] <u>See, e.g.</u>, <u>Cremeans v. First Guar. Bank</u>, No. 97-1577, 1998 U.S. Dist. LEXIS 1089, at *6-7 (E.D. La. Jan. 27, 1998) (Although the plaintiff claimed he had an oral agreement with his employer for a five-year contract, the court reasoned that the corroborating evidence was insufficient. The plaintiff's wife, friend, and neighbor testified that the five-year period was a time frame for turning the bank around and for when the plaintiff would retire, but the court concluded that these statements suggested a retirement goal, not a contract.).

Because Graphic has failed to meet its burden of establishing the existence of the 1999 oral agreement, the Court finds that Graphic has failed to show that Hydrovac unequivocally accepted the indemnity contract.

Accordingly, Hydrovac and Zurich are not contractually bound to provide indemnification. Their Motions for Summary Judgment on this claim are GRANTED, and Graphic's Motion for Summary Judgment is DENIED.

---

[4]While her statement is arguably consistent with Graphic's course of dealing claim, the Court has already determined that an indemnity contract cannot be implied from course of dealing. See <u>Freeman</u>, 108 F. Supp. 2d at 645.

## C. Insurance

Graphic claims that it qualifies as an "additional insured" under Hydrovac's insurance policy with Zurich, and, therefore, is entitled to defense.[5] Hydrovac and Zurich respond that no written contract naming Graphic as an additional insured was executed prior to the accident, and, even if a written contract existed, Zurich does not owe a duty to defend because Graphic is immune from Boucher's tort claims.

### 1. Additional Insured

Graphic argues that the October 21, 2004 purchase order and its attached terms and conditions constitute a written contract to name Graphic as an additional insured.[6] Based on the parties' course of dealing, Graphic argues that Hydrovac accepted the terms and conditions when it began performing. The terms and conditions attached to each Graphic purchase order state that ". . . performance of this Purchase Order will constitute acceptance by Seller of all Terms and Conditions hereof," and require that "Graphic . . . [be] named as [an] additional insured" under the subcontractor's insurance policy. [Doc. No. 75, Exhs. 2B & 2C]. For the past five years, Hydrovac

---

[5]Although the Court has found that Graphic is not entitled to indemnification, "[u]nder Louisiana law, an insurer's duty to defend suits brought against an insured is broader than its duty to indemnify the insured." Lamar Adver. Co. v. Cont'l Cas. Co., 396 F.3d 654, 660 (5th Cir. 2005) (internal citations omitted).

[6]Graphic also argues that an insurance contract was formed via the 1999 oral agreement and a certificate of insurance naming Graphic as an additional insured. [Doc. No. 61, Exh. 12]. For the reasons previously mentioned, Graphic has failed to establish the existence of the 1999 oral agreement. Additionally, the certificate sent to Graphic on May 5, 2003, explicitly states that it confers no rights on the certificate holder, and, therefore, does not qualify as a written contract. [Doc. No. 61, Exh. 12]. See D & L Marine Transp. Inc. v. Suard Barge Serv., Inc., No. 01-3006, 2003 U.S. Dist. LEXIS 16721, at *16-17 (E.D. La. Sept. 22, 2003) (Where the certificate of insurance specifically stated that it conferred no rights upon the certificate holder, the party claiming coverage could not rely on it to trigger contractual liability coverage.).

8

has performed services for Graphic under subsequently issued purchase orders containing the insurance and acceptance provisions and has never objected.

Hydrovac and Zurich respond that Zurich's policy requires a preexisting written contract, and no written contract naming Graphic as an additional insured was executed prior to the accident. Even if the October 21, 2004 purchase order qualifies as a written contract, they contend that Graphic cannot rely on the parties' course of dealing to show that Hydrovac accepted the terms and conditions of the purchase order. Graphic's master service agreement states that the terms and conditions of its purchase order are binding regardless of when a purchase order is issued. Graphic's purchasing manager, Mr. Touzet, testified that the terms and conditions of a purchase order do not apply to work done prior to the issuance of the purchase order if no master service agreement was in effect and confirmed that Graphic did not have a master service agreement with Hydrovac prior to the agreement. [Doc. No. 57, Exh. 2, p. 44, lines 14-18; p. 47, lines 24-25; p. 48, line 1].

An insurance policy is subject to the general rules of contract interpretation. See Succession of Fannaly v. Lafayette Ins. Co., 2001-1144, p. 2 (La. 1/15/02); 805 So. 2d 1134, 1135. Words in an insurance contract must be given their general meaning, and courts must enforce the clear and unambiguous language of the policy. See La. Civ. Code arts. 2046 & 2047. Any ambiguities must be construed in favor of the insured. See, e.g., Exxon Corporation v. St. Paul Fire and Marine Insurance Company, 129 F.3d 781, 788 (5th Cir. 1997).

"A 'course of dealing' is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." La. Rev. Stat. § 10:1-303. To prove there was a "course of dealing," Graphic must show that "the . . . language in question was

forwarded to [Hydrovac] with enough consistency that [Hydrovac] knew or should have known that the . . . language existed and that [Graphic] considered it applicable between the parties." Freeman, 108 F. Supp. 2d at 646. Additionally, "[w]hen an offeror invites an offeree to accept by performance and, according to usage or the nature or the terms of the contract, it is contemplated that the performance will be completed if commenced, a contract is formed when the offeree begins the requested performance." La. Civ. Code art. 1939.

To qualify as an additional insured, Zurich's policy requires a written contract:

> **Who is An Insured** is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

[Doc. No. 61, Exh. 10, p. 40] (emphasis in original).[7] The policy does not contain a limitation requiring a preexisting written contract, in contrast to the indemnification provision. See [Doc. No. 61, Exh. 10, p. 19] ("[T]he bodily injury [the party is claiming coverage for]. . . [must] occu[r] subsequent to the execution of the contract or agreement."). "That one section of a policy contains a condition not found in another section of the policy does not render the former provision ambiguous." D & L Marine Transp. Inc., 2003 U.S. Dist. LEXIS 16721, at *15. By its clear and unambiguous terms, the Court finds that Zurich's additional insured provision does not require a

---

[7]The additional insured provision also states that "[s]uch person or organization is an additional insured only with respect to liability arising out of your [(Hydrovac's)] ongoing operations performed for that insured [(Graphic)]. [Doc. No. 61, Exh. 10, p. 40]. Zurich concedes that the principal plaintiff "was injured at Graphic Packaging while performing duties within the course and scope of his employment with Hydrovac." [Doc. No. 61, p. 2]. Therefore, the principal plaintiff's claim is related to Hydrovac's ongoing operations even though the allegations in his Complaint [Doc. No. 1, ¶¶ 3-7, 9,11-12] focus on Graphic's negligence. See, e.g., Saavedra v. Murphy Oil U.S.A., Inc., 930 F.2d 1104, 1110 (5th Cir. 1991) (Because the accident at issue was directly related to the third-party defendant's work, the "ongoing operation" clause was satisfied, and the policy extended additional insured status.).

preexisting written contract.

A course of dealing is established by the parties' objective course of conduct. For the past five years, Graphic's purchase orders have included the disputed provisions, and Hydrovac has never raised an objection. Therefore, it was reasonable for Graphic to expect that a contract governed by its standard terms and conditions was formed when Hydrovac began performing on October 17, 2004. See National Marine, Inc. v. Glencore Lmtd., No. 95-2682, 1998 U.S. Dist. LEXIS 3332, at *13-15 (E.D. La. March 16, 1998) (Where the subsequently issued written agreement was always sent after performance began, always contained the disputed liability and acceptance provisions, and the party challenging enforcement failed to object, the court held that a binding contract was formed.). Mr. Touzet's testimony does not undermine the fact that Hydrovac was aware of the insurance and acceptance provisions and that Graphic considered them applicable between the parties; to hold otherwise would allow subjective opinion to defeat a course of dealing analysis.

Therefore, the Court finds that Hydrovac executed a written insurance contract extending additional insured status to Graphic.

The Court must now determine whether Graphic is entitled to a defense under Hydrovac's insurance policy with Zurich.

### 2. Duty to Defend

Graphic claims that, because it qualifies as an additional insured, Zurich is obligated to defend Graphic against any suit seeking damages for bodily injury and pay any damages Graphic is legally obligated to pay. See [Doc. No. 61, Exh. 10, p. 18]. Hydrovac and Zurich respond that Graphic's third-party claim for defense should be dismissed because Graphic is entitled to statutory immunity from Boucher's tort claims.

"Whether an insurer has a duty to defend is determined solely by 'comparing the allegations in the complaint against the insured with the terms of the policy' at issue -- the so-called 'eight corners' rule." Lamar, 396 F.3d at 660 (citing references omitted). "If 'there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded,' the insurer must defend the insured." Id. "Accordingly, 'assuming all the allegations of the petition are true, the insurer must defend, regardless of the outcome of the suit, if there would be both (1) coverage under the policy and (2) liability to the plaintiff.'" Id.

In order to find that Zurich has a duty to defend, Graphic must demonstrate that Boucher's Complaint sets forth an allegation which, if true, would render Zurich liable for a judgment against Graphic. While the Court has determined that Graphic has coverage under the policy, Graphic has no liability to Boucher. As discussed below, Graphic is entitled to statutory immunity from Boucher's tort claims under Louisiana's statutory employer defense. Id. at 660. Accordingly, the Court finds that Zurich has no duty to defend Graphic.

Hydrovac's and Zurich's Motions for Summary Judgment regarding insurance are GRANTED, and Graphic's Motion for Summary Judgment is DENIED.

### D. Statutory Employment

Graphic claims that it is entitled to statutory immunity from Boucher's claims of negligence and strict liability under Louisiana's statutory employer defense. See La. Rev. Stat. § 23:1061(A)(1). Graphic reiterates its arguments regarding insurance and argues that the October 21, 2004 purchase order and its attached terms and conditions constitute a written contract designating it as a "statutory

employer" and Hydrovac's employees as "statutory employees."[8] Boucher responds that, even if the parties' course of dealing shows that Hydrovac accepted the terms and conditions of the October 21, 2004 purchase order, that purchase order was not "in existence" at the time of the accident on October 19, 2004.

In Louisiana, a statutory employee who is injured in an accident during the course and scope of his employment is limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and may not sue his employer or any principal in tort. See La. Rev. Stat. § 23:1061(A)(1). A statutory employment relationship does not exist "unless there is a written contract between the principal and a contractor. . . which recognizes the principal as a statutory employer." La. Rev. Stat. § 23:1061(A)(3).

By its express terms, Louisiana Revised Statute § 23:1061 does not specify when the written contract must be executed. See La. Rev. Stat. § 23:1061(A)(3). In Ernest v. Petroleum Serv. Corp., 2002-CA-2482 (La. App. 1 Cir. 11/19/03); 868 So. 2d 96, 99, the contract between the defendant and the third-party subcontractor was amended after the accident to include an express statutory employer provision. The court held that the defendant was not a statutory employer because it "failed to demonstrate the existence of a written contract providing for the statutory relationship. . . at the time of the accident." Id. However, unlike the contract in Ernest, the October 21, 2004 purchase order accurately represented the parties' meeting of the minds at the time of the accident. See National Marine, Inc., 1998 U.S. Dist. LEXIS 3332, at *9-11 (A binding contract is formed

---

[8]The "General Terms and Conditions" attached to the purchase order states "it is the intent and agreement of the parties hereto that the relationship of the Buyer (owner) [Graphic] to the direct employees and the statutory employees of the Seller (contractor) [Hydrovac] be that of a statutory employer." [Doc. No. 75, Exh. 2B].

when the written document sent after performance has begun accurately represents the parties' meeting of the minds.). Therefore, the Court finds that a statutory employer relationship was "in existence" when Hydrovac began performing. Accordingly, Boucher is limited to workers' compensation benefits as his exclusive remedy under Louisiana Revised Statute § 23:1061.

Graphic's Motion for Summary Judgment regarding statutory employment is GRANTED, and Boucher's Motion for Summary Judgment is DENIED.

### III. CONCLUSION

For the foregoing reasons, Hydrovac's and Zurich's Motions for Summary Judgment [Doc. Nos. 57 & 61] regarding indemnification and insurance are GRANTED, Graphic's Motion for Summary Judgment [Doc. No. 75] is DENIED, and Graphic's third-party claims are DISMISSED WITH PREJUDICE. Graphic's Motion for Summary Judgment [Doc. No. 92] regarding statutory employment is GRANTED, Boucher's Motion for Summary Judgment [Doc. No. 96] is DENIED, and his claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 4 day of June, 2007.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE